DOMINECO SURACE et al., Respondents, *v.* SAM DANNA, Appellant, Impleaded with Another.

Workmen's compensation — execution — balance of lump payment of award under Workmen's Compensation Law, to credit of workman, exempt from levy under execution — exemption not limited to compensation owing and unpaid.

Lump payments of an award, made under the Workmen's Compensation Law (Cons. Laws, ch. 67) to a workman for injuries suffered in the course of his employment, represent a fund for his maintenance while disability continues and a balance thereof on deposit in a trust company to his credit is exempted from execution by section 33 of that statute providing that "compensation or benefits due * * * shall be exempt from all claims of creditors and from levy, execution and attachment." A contention that the word "due" must be held to limit the exemption to compensation owing and unpaid and that moneys due under an award become subject to seizure the instant they are paid cannot be sustained.

*Surace* v. *Danna*, 221 App. Div. 785, reversed.

(Submitted March 27, 1928; decided May 1, 1928.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial

department, entered June 28, 1927, which affirmed an order of the Monroe County Court, made in supplementary proceedings, directing the Central Trust Company of Rochester to pay to the sheriff of Monroe county a sum sufficient to satisfy the judgment out of moneys on deposit with said trust company to the credit of the judgment debtor.

The following questions were certified:

" 1. Were the funds of Sam Danna on deposit with the Central Trust Company of Rochester, which were the avails of payment made by the Industrial Commission to Danna under the terms of the Workmen's Compensation Act, applicable to the payment of the judgment involved in this proceeding?

" 2. Should the order appealed from have been affirmed as a matter of law? "

*H. H. Cohen* and *Samuel J. Danno* for appellant. The money directed to be paid by the order of the County Court was and is " exempt from all claims of creditors and from levy, execution and attachment." (*Post* v. *Burger,* 216 N. Y. 544; *Matter of Petrie,* 215 N. Y. 335; *Yates County Nat. Bank* v. *Carpenter,* 119 N. Y. 550; *Stockwell* v. *Malone Nat. Bank,* 36 Hun, 583.)

*Jerry R. Leonardo* for respondents. Compensation moneys when once paid to the employee are not exempt under the provisions of section 33 of the Workmen's Compensation Law. This section of the compensation law applies only to moneys due the employee and only until they are paid to him or his dependents in case of his death. (*Bull* v. *Case,* 165 N. Y. 578; *Baker* v. *Brintnall,* 52 Barb. 188; Sedgwick on Stat. & Const. Law, 267, 268.)

CARDOZO, Ch. J. Sam Danna had an award of $3,500 from the State Industrial Commission under the Workmen's Compensation Law (Cons. Laws, ch. 67) for injuries suffered in the course of his employment. He deposited

the money in the Central Trust Company of Rochester. Thereafter a judgment was recovered against him for $558.15, and execution returned unsatisfied. Supplementary proceedings followed. On deposit with the trust company when the proceedings were begun was a balance of $2,600, a sum more than sufficient to satisfy the judgment. The judgment creditors obtained an order upon notice to the trust company and the depositor directing payment by the trust company to the sheriff of $591.22. The question is whether the moneys are exempt.

Workmen's Compensation Law (§ 33) provides: "Compensation or benefits due under this chapter shall not be assigned, released or commuted except as provided by this chapter, and shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived."

By concession the moneys due under the award would have been exempt from the pursuit of creditors before they reached the judgment debtor. The argument is, however, that they became subject to seizure the instant they were paid. If this is so, the exemption is next to futile. All that a creditor has to do is to obtain an order in supplementary proceedings, containing, like the order in this proceeding, the usual provision restraining the judgment debtor from making any transfer or disposition of his property until further directions in the premises. Then, as the installments of an award are paid, the injunction will tie them up. They may be appropriated to the last dollar in satisfaction of an ancient debt. They will no longer be a fund for the support of the indigent and helpless.

So narrow a construction thwarts the purpose of the statute. The Workmen's Compensation Law was framed to supply an injured workman with a substitute for wages during the whole or at least a part of the term of disability. He was to be saved from becoming one of the

derelicts of society, a fragment of human wreckage (*Matter of Post* v. *Burger & Gohlke,* 215 N. Y. 544; *N. Y. C. R. R. Co.* v. *White,* 243 U. S. 188, 197). He was to have enough to sustain him in a fashion measurably consistent with his former habits of life during the trying days of readjustment. The cost of such support becomes a charge upon the industry without regard to fault. Rehabilitation of the man, not payment of his ancient debts, is the theme of the statute, and its animating motive.

The exemption must have a meaning consistent with the policy behind it. Few words are so plain that the context or the occasion is without capacity to enlarge or narrow their extension. The thought behind the phrase proclaims itself misread when the outcome of the reading is injustice or absurdity (*Smith* v. *People,* 47 N. Y. 330, 341, 342; *Matter of Meyer,* 209 N. Y. 386, 389). Adherence to the letter will not be suffered to " defeat the general purpose and manifest policy intended to be promoted " (*Spencer* v. *Myers,* 150 N. Y. 269, 275; *People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43; *Matter of Folsom,* 56 N. Y. 60, 66; Kent's Comm. 462). We are told that the word " due " must be held to limit the exemption to compensation owing and unpaid. But " due," like words generally (*Towne* v. *Eisner,* 245 U. S. 418, 425; *Int. Stevedoring Co.* v. *Haverty,* 272 U. S. 50), has a color and a content that can vary with the setting. Compensation due under an act may be a payment presently owing, or one to become due in the future, or one already made, but made because due, *i. e.,* required or commanded (cf. *Allen* v. *Patterson,* 7 N. Y. 476; *U. S.* v. *State Bank of North Carolina,* 6 Pet. [U. S.] 29, 36). If the narrower meaning is the commoner, the broader does not strain the word beyond the limits of construction. A workman, holding in his hands a payment made by his employer or an insurance carrier in satisfaction of an award might say not inappropriately that the money so received was due under the

statute. The argument is not compelling that some of the prohibited acts — assignment, release, commutation — apply to compensation before the stage of payment, because impossible thereafter. This does not mean that other acts — execution, attachment, supplementary proceedings — appropriate or possible in later stages must be fitted to the same mould. The maxim *" reddendo singula singulis "* supplies the applicable rule.

The fundamental policy of workmen's compensation is a token of intention to be ranked as first and foremost. It is reinforced by others. Section 33 as first enacted was to the effect that " claims for " compensation or benefits were not to be assigned or released and were to be exempt from legal process. By the amendment of 1922 the words quoted are omitted. Under the statute as it now reads, the exemption is affixed to the compensation, and not merely to the claim. The strength of the desire to give protection to the workman is accentuated also by the final words of the section, " which exemption may not be waived." The claimant is to be protected against his own improvidence or folly (cf. the cognate sections 24 and 32). We are blind to the policy of workmen's compensation if we say that the purpose of the exemption, thus emphatically guarded, is to promote the convenience of the State by withdrawing the occasion for conflicting claims of ownership. There shines through the statute, both here and in related sections, a worthier conception of the duty of the State to the helpless and hapless in an industrial society. From the viewpoint of mere convenience, an assignment or release or commutation of an award is a matter of indifference to the State or its officials. Payments are made for the most part by the employer or an insurer. When not made by these, they are made from the State fund. Release, instead of imperilling the fund, would have a tendency to strengthen it. A public officer may assign his salary after an installment is already due

(Mechem on Public Officers, §§ 874, 875; *Bliss* v. *Lawrence*, 58 N. Y. 442; *B. N. Bank* v. *Wilson*, 122 N. Y. 478; *Matter of Worthington*, 141 N. Y. 9; cf. *McCoun* v. *Dorsheimer*, 1 Clark Ch. 144; *Hadley* v. *Peabody*, 13 Gray, 200). Not so, a disabled workman who would part with his award. " Compensation and benefits shall be paid only to employees or their dependents " (Workmen's Compensation Law, § 33). At the root of the exemption is something more benignant than bureaucratic formalism, a dislike of complicating documents. The exemption like the compensation is for the protection of the man.

One other signpost of intention is at hand to give direction to the way. It is found in a different statute, but one in *pari materia*. A statute long in force provides that " the earnings of the judgment debtor for his personal services rendered within sixty days " before supplementary proceedings are exempt from seizure " when it is made to appear by his oath or otherwise that those earnings are necessary for the use of a family wholly or partly supported by his labor " (Civ. Prac. Act, § 777; Code Civ. Pro. § 2463). Execution is permissible for ten per cent of his accruing wages, but even that percentage is exempt if the wages are less than twelve dollars per week (Civ. Prac. Act, § 684). Compensation or benefits under the Workmen's Compensation Law are not earnings for personal services. The result will therefore be, unless the exemption follows the payment into the hands of the injured workman, that he will be in a position less favorable than his brother-workmen who are blessed with health and strength. *Their* earnings for sixty days, if necessary for the care of the family, are withdrawn from the reach of creditors. *His* meagre allowance may be diverted from his family, and used to pay his debts. The vast majority of awards under the act are payable periodically in bi-weekly installments (Workmen's Comp. Law, § 25). Commutation is exceptional, and may be ordered by the Industrial Board

only when found to be " in the interests of justice " (§ 25; *Adams* v. *N. Y., O. & W. Ry. Co.*, 175 App. Div. 714; 220 N. Y. 579). We infer from the size of the payment to this workman that in this instance lump payments were substituted for the periodical installments. Even so, they represent a fund for his maintenance while disability continues. His untrammeled use of them for that purpose is as necessary as if the payments were spread over the years.

In these circumstances, our decision in *Yates County National Bank* v. *Carpenter* (119 N. Y. 550) supplies the applicable rule. Code of Civil Procedure, section 1393 (now Civ. Prac. Act, § 667), exempts from execution a " pension * * * heretofore or hereafter granted by the United States * * * for military * * * services." We were asked to limit this exemption to the pension or the pension moneys before payment by the government. We held that it protected moneys collected by the pensioner. We even extended the immunity to a dwelling house and lot in which the moneys were invested. " It is quite obvious," we said, " that such an exemption can produce no beneficial effect, unless it is extended beyond the letter of the act, and given life and force, according to its evident spirit and meaning " (cf. *Stockwell* v. *National Bank of Malone*, 36 Hun, 583; *Burgette* v. *Fancher*, 35 Hun, 647; *Benedict* v. *Higgins*, 165 App. Div. 611; *Price* v. *Soc. of Savings*, 64 Conn. 362). No doubt there are decisions giving color of support for a narrower construction. They deal with statutes framed on other lines, and animated by a policy less paternal in its aim. Thus *McIntosh* v. *Aubrey* (185 U. S. 122) and *Kellogg* v. *Waite* (12 Allen, 529) construe a Federal statute which exempts a " sum of money due, or to become due, to any pensioner." The statute itself supplies a gloss upon the meaning. The money is to be exempt " whether the same remains with the Pension Office, or any officer or agent thereof, or is in course of transmission to the pen-

sioner entitled thereto." (R. S. § 4747.) The implication is not difficult that the exemption is to cease when the transit has been ended. *Bull* v. *Case* (165 N. Y. 578) has to do with a section of the Insurance Law exempting money " to be paid " by membership insurance societies to their members or to others who may be named as beneficiaries (cf. *Matter of Lynch,* 83 Hun, 462; 150 N. Y. 560). There was support for a strict construction, not merely in the letter of the act, but in cogent considerations of public policy and justice. The insurance to be protected was without limit of amount (see opinion of CULLEN, J., in *Bull* v. *Case,* 41 App. Div. 391, 392). The exemption, if it could survive collection, would guard a great fortune as fully as a widow's mite. The statute now before us protects the dole of the disabled. The end to be served, the mischief to be averted, supply the clews and the keys by which construction must be governed.

The order of the Appellate Division and that of the County Court should be reversed, without costs, and the questions certified answered in the negative.

O'BRIEN, J. (dissenting). Appellant's claim to exemption from execution against moneys heretofore paid to him as compensation for injury rests upon this provision of section 33, Workmen's Compensation Law: " Compensation or benefits due under this chapter, shall not be assigned, released or commuted except as provided by this chapter, and shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived. Compensation and benefits shall be paid only to employees or their dependents."

No property is exempt from execution unless some statute makes it so, and the burden is upon the person claiming exemption to bring his property within some statutory exception. (*Baker* v. *Brintnall,* 52 Barb. 188.) The question whether any one shall receive the privilege

of escaping payment of a debt is one of policy and, therefore, one essentially for legislative action. The law-making body has seen fit to continue to impose upon one recovering a judgment in an action for personal injuries the duty to discharge his pecuniary obligations to those who have trusted him. It may relieve him of that duty just as it may lighten the financial burdens of one obtaining compensation under the Workmen's Compensation Law. We ought not to hold that the Legislature has done so in either case unless its language clearly indicates such an intention.

I can read in the act no such legislative purpose. The compensation and benefits which are exempt are only those which are " due." The statute does not deal with those which have been paid. Compensation and benefits which are due are not merely made free from claims of all kinds; the workman himself is forbidden to *assign* them or to waive his exemption from execution. We would have to go to extraordinary lengths before we could hold that the statute purposes to prevent any one from *assigning* compensation after it has been paid to him. How could an injured workman support himself, if he were prohibited from assigning his own money and if his creditors could not compel him to pay what he owes them? Clearly, to my mind, this section forbids assignments and waivers of exemption from execution only so long as the money remains in the custody of the State or the employer. This idea is reinforced by the last sentence in that part of the section above quoted: " Compensation and benefits shall be paid only to employees or their dependents," and the further provision in section 33 directing, in case of the death of an injured employee to whom any compensation was " due " at the time of his death, that such compensation shall be " payable " to certain designated relatives. All through section 33 the word " due " seems to mean " payable." Compensation can no longer be due or payable after it

has been paid. The purpose of section 33 impresses me as directing a mode of procedure by which the State or the employer may be enabled to get rid of compensation, which is due and payable, simply by paying it over to the person to whom it has been awarded or to whom it is payable under the statute. The agent, public or private, who makes the disbursement shall not be harassed or obstructed by the imposition of a duty to determine at his peril the validity of assignments, third party orders, executions or any kind of document purporting to constitute legal process. He is not to be turned into a stakeholder but is to be a disbursing agent and nothing else. After his function as such has been discharged, the beneficiary may do with his compensation as he wills. The money belongs to him and, in the absence of a clear statute of exemption, it is, like other property, subject to execution. This policy may not embody such humanity and benevolence as we may think the State ought to dispense to the victims of industrial casualties. The Legislature is free to change its present policy. Our duty is to interpret the law as we find it.

In this statute, the word " due " is, I think, used by the Legislature in the sense in which that and cognate words have been defined by the courts. In *Bull* v. *Case* (165 N. Y. 578) we decided that the section of the Insurance Law (Cons. Laws, ch. 28) which provides that " all money or other benefit, charity, relief or aid *to be paid* * * * shall not be liable to be seized, taken or appropriated " (§ 238) does not include the case of money after it has been paid. The act of Congress (R. S. § 4747) which directs that " no sum of money *due, or to become due*, to any pensioner, shall be liable to attachment, levy or seizure " has been held to protect pension moneys only until they have been paid. (*McIntosh* v. *Aubrey*, 185 U. S. 122; *Smith* v. *Blood*, 106 App. Div. 317, 324, per CHASE, J.) Our decision in *Yates County Nat. Bank* v. *Carpenter* (119 N. Y. 550) does not, it seems

to me, announce any essentially different doctrine. In that case we construed a statute which provided that "a pension heretofore or hereafter *granted* by the United States * * * for military * * * services * * * is also exempt from levy and sale by virtue of an execution, and from seizure for non-payment of taxes, or in any other legal proceeding." (Civ. Prac. Act, § 667.) That statute plainly exempted the pension not only before but also after the money had reached the beneficiary. Property purchased with pension money and necessary for the pensioner's maintenance is the equivalent of and represents the pension. That is the theory upon which that case was decided. No one pretended that, under that statute, the pension money itself, even after it had been paid to the beneficiary, could be seized or levied upon. Therein lies the vital distinction between this and the *Carpenter* case. The authority of that decision has, moreover, been shaken by the opinion of the Supreme Court of the United States in *McIntosh* v. *Aubrey* (*supra*).

POUND, CRANE, LEHMAN and KELLOGG, JJ., concur with CARDOZO, Ch. J.; O'BRIEN, J., dissents in opinion; ANDREWS, J., not sitting.

Orders reversed, etc.