**In re Edward F. DULAS and Connie L. Dulas, Debtors.**

**Bankruptcy No. 4–94–4243.**

United States Bankruptcy Court,
D. Minnesota.

Feb. 9, 1995.

T. Chris Stewart, Minneapolis, MN, for debtors.

Julia A. Christians, Trustee, Lapp, Laurie, Libra, Abramson & Thomson, Minneapolis, MN, for Trustee.

## ORDER OVERRULING OBJECTION TO EXEMPTION

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 9th day of November, 1994, on a objection by the trustee to claimed exempt property. Appearances were as follows: Julia Christians as and for the trustee; and T. Chris Stewart for the debtors, Edward and Connie Dulas (collectively "the Debtors").

## FACTUAL BACKGROUND

In 1984, Connie Dulas ("Connie") was involved in an automobile accident. As a result of the accident, Connie suffered severe personal injuries, including total vision loss. The Debtors subsequently sued the parties involved in the accident and, on January 24, 1984, entered into a Settlement Agreement ("Agreement"). Pursuant to the terms of the Agreement, Connie is entitled to receive monthly payments in the amount of $3,150 that commenced on February 15, 1984 and will continue for 480 months until February 15, 2024. Further, Connie is entitled to payment in the amount of $200,000 on August 22, 2010—her 65th birthday. The payments under the Agreement are guaranteed through an annuity insurance contract with the Life Insurance Company of North America ("annuity").

On August 24, 1994, Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On their Schedule I, Debtors indicated that Edward Dulas' monthly income is $303 per month, and that Connie does not work. Therefore, the monthly annuity payment is the Debtors' major source of income. On their Schedule C, Debtors listed the annuity payments as exempt pursuant to Minn.Stat. § 550.37, subd.

22 ("subdivision 22"). The trustee now objects to the claimed exemption.

## ISSUE

The issue is whether a debtor's right to receive a structured settlement that includes term payments and one large payment as a result of personal injuries is a "right of action for injuries to the person" and therefore exempt under Minnesota law.

## POSITION OF THE PARTIES

The trustee argues that the structured settlement payments are not exempt since the exemption statute only exempts "rights of action for injuries to the person." The trustee reasons that because no part of the personal injury lawsuit is pending but is instead fully settled, the Debtors do not have a right of action. In response, the Debtors insist that the structured settlement payments are precisely the type of payments the legislature intended to exempt when it enacted the statute.

## DISCUSSION

A. *Minn.Stat. § 550.37, subd. 22*

■ Pursuant to Minnesota's exemption statute, "Rights of action for injuries to the person of the debtor or of a relative whether or not resulting in death" are exempt from any attachment, garnishment or sale on any final process. Minn.Stat. § 550.37, subd. 22 (1994). In order for the annuity payments to be exempt under subdivision 22, they must be: (1) "rights of action" as contemplated by the statute; and (2) payments for "injuries to the person." This subsection is to be construed broadly in favor of the debtor. *In re Carlson,* 40 B.R. 746, 749 (Bankr.D.Minn. 1984).

Here, the parties do not dispute that the annuity payments are for injuries to the person. The only issue is whether the Debtors' right to the annuity payments is a right of action.

B. *Prior Cases*

No Minnesota state or federal court has addressed whether the right to receive payments from a structured settlement arising out of a personal injury is a "right of action for injuries to a person." All four bankruptcy judges in this jurisdiction have, however, briefly touched upon the meaning of the term "right of action" as used in subdivision 22.

In *In re Medill,* 119 B.R. 685 (Bankr. D.Minn.1990), the debtors listed as exempt a pending personal injury litigation. In addressing the constitutionality of subdivision 22, Judge Kishel noted in dicta and in a footnote that "[a] right to receive payments on account of a settled or fully-litigated personal-injury cause of action reduced to judgment would likely *not* fall within the ambit of [subdivision 22]." *Id.* at 687 n. 3 (citing *Carlson,* 40 B.R. at 750) (emphasis in original).

Similarly, Judge O'Brien, in *In re Bailey,* 84 B.R. 608 (Bankr.D.Minn.1988), and I, in *In re Ezaki,* 140 B.R. 747 (Bankr.D.Minn. 1992), have defined the term "right of action" but have never decided the issue now presented. In these cases, we noted that a right of action "pertains to remedy and relief through judicial procedure." *Ezaki,* 140 B.R. at 750; *Bailey,* 84 B.R. at 610 n. 1 (quoting Black's Law Dictionary 1190 (5th ed. 1979)). Therefore, according to this definition, a debtor only has a right of action to the extent that he has a remedy or available relief through judicial procedure.

Finally, in facts most similar to the present case, *In re Carlson,* 40 B.R. 746 (Bankr. D.Minn.1984) involved a debtor who claimed as exempt the proceeds resulting from a settlement of a personal injury case. Judge Kressel concluded that the debtors possessed a "right of action for injuries" at the time they filed their bankruptcy petition since the lawsuit was still pending. Judge Kressel found it irrelevant that the parties had reached a compromise agreement since no payment had been made nor releases signed at the time the petition was filed. *Id.* at 750.

While all the bankruptcy judges in this district have touched upon the term "right of action", no reported decision specifically addresses whether a structured settlement arising out of a personal injury constitutes a

"right of action for injuries to the person." [1] This is a case of first impression.

## C. Resolution

The starting point for resolving this issue is the language of the statute itself. *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). A statute is to be construed as a whole so as to harmonize and give effect to all its parts. If possible, it is to be construed so that no word, phrase, or sentence will be superfluous, void, or insufficient. *Hurst v. Town of Martinsburg*, 80 Minn. 40, 43, 82 N.W. 1099 (1900). In construing statutes, the canons of interpretation are to govern unless their observance would involve a construction inconsistent with the manifest intent of the legislature or would be repugnant to the context of the statute. *Governmental Research Bureau, Inc. v. St. Louis County*, 258 Minn. 350, 353–54, 104 N.W.2d 411, 414 (1960). In discovering the intent of the legislature, the court should examine the history of the statute. *Id.*

Here, the meaning of subdivision 22, particularly the term "rights of action", is not clear on its face. Rather, it is ambiguous. While the definition of "rights of action" may be helpful, it does not clarify the meaning of the term as used in the statute. Thus, I must look to the legislative history of subdivision 22 to ascertain the legislative intent. The problem, however, is that no such history exists. *See Carlson*, 40 B.R. at 748 (discussing the lack of legislative history). The only guidance in this respect is Judge Kressel's observation that subdivision 22 was intended to be broader than its equivalent

federal law exemption—section 522(d)(11) of the Code which exempts a debtor's right to receive "*a payment ... on account of personal bodily injury.*" 11 U.S.C. § 522(d)(11)(D) (emphasis added). *See Carlson*, 40 B.R. at 750.

This reasoning comports with the policy behind subdivision 22:

"The humane and enlightened purpose of an exemption is to protect a debtor and his family against absolute want by allowing them out of his property some reasonable means of support and education and the maintenance of the decencies and proprieties of life. The legislative purpose was to adapt the exemptions granted to the circumstances and needs of different classes of debtors."

These policies apply with even more force to the personal injury right of action exemption because it deals not so much with the debtor's property, but with the debtor's human capital.... *The debtor who suffers serious personal injury is deprived of using his or her human capital in getting a fresh start.*

*Medill v. State*, 477 N.W.2d 703, 708 (Minn. 1991) (quoting *Poznanovic v. Maki*, 209 Minn. 379, 382, 296 N.W. 415, 417 (1941)) (emphasis added).

Based on the ambiguous language of subdivision 22 and the policy behind the personal injury exemption, I find no genuinely good reason why the exemption statute should be construed to not include a structured settlement in which the debtor is receiving payment. As Judge Kyle of the United States

---

1. The issue here is not whether an annuity that is part of a structured settlement agreement arising out of a personal injury claim is exempt under Minnesota law. Many cases address that issue under state statutes specifically providing for the exemption of certain annuities. *See, e.g., In re Solomon*, 166 B.R. 998 (Bankr.S.D.Fla.1994); *In re Dillon*, 166 B.R. 766 (Bankr.S.D.Fla.1994); *In re Rhinebolt*, 131 B.R. 973 (Bankr.S.D.Ohio 1991); *In re Johnson*, 108 B.R. 240 (Bankr. D.N.D.1989); *In re Simon*, 71 B.R. 65 (Bankr. N.D.Ohio 1987). Here, the Minnesota exemption statute pertaining to annuities only covers those instances where an annuity is created by an employer for an employee, or by a self-employed person, to provide for retirement or in-

come protection. *See* Minn.Stat. § 550.37, subd. 24 (1994); *In re Gagne*, 166 B.R. 362, 365 (Bankr.D.Minn.1993), *aff'd, Gagne v. Bergquist*, No. 3–94–470, 1994 WL 779765 (D.Minn. Sept. 1, 1994); *In re Raymond*, 71 B.R. 628, 630 (Bankr.D.Minn.1987).

Likewise, the issue is not whether a lump-sum settlement arising out of a personal injury action is exempt. There is a clear distinction between payment of a settlement in a lump-sum as opposed to payment in a structured settlement over time. *See, e.g., In re Gagne*, 163 B.R. 819, 823 (Bankr.D.Minn.1994), *rev'd on other grounds*, 172 B.R. 50 (D.Minn.1994) (holding that total payment of a settlement in the form of a lump-sum is not a "right of action").

District Court for the District of Minnesota noted:

> It is true that "right of action" is defined as "pertain[ing] to remedy and relief through judicial procedure." ... That [the debtor] could not litigate his claims to a favorable judgment does not, however, mean that the restitution payment is not a right of action. Any settlement that is used to settle claims one party has against another, whether those claims may be recovered upon, relates to gaining relief through judicial procedure. A claim may be too stale or premature to be actionable; nevertheless, if an individual, even the United States, chooses to settle that claim, the settlement is a "right of action."

*Ezaki v. Bergquist*, NO. 3–92–433, slip op. at 5 n. 3 (D.Minn. Nov. 6, 1992).

This result is implicitly endorsed by the Minnesota Supreme Court, which stated:

> As an example, one person may be rendered a quadriplegic by an accident and require $1,000,000 or more of support for the rest of that person's life while another may only be partially injured and return to normal livelihood. The result of the damages is the same even though in different amounts—an attempt to render that person whole. *We can find no reason why the creditor should be able to attach a structured settlement any more than a homestead.*

*Medill v. State*, 477 N.W.2d at 709 (emphasis added).

Finally, this conclusion comports with the accepted rule that exemption statutes are to be construed broadly in favor of the debtor, and that the purpose of subdivision 22 is to protect a debtor who is deprived of using her human capital in obtaining a fresh start.

### CONCLUSION

ACCORDINGLY, IT IS HEREBY ORDERED THAT the trustee's objection to the claimed exemption is OVERRULED.